UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2020 JUL 23 PM 1:43
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ROBERT BELCHER and, <br> ZARINA BELCHER <br><br> Plaintiffs <br><br> v. <br><br> BANK OF NEW YORK, MELLON, <br> SELECT PORTFOLIO SERVICING, INC., <br> and <br> JOHN DOES 1-10 <br><br> Defendants | CIVIL NO. 1:20-CV-10511-IT <br><br> JURY TRIAL REQUESTED |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
(drafted with assistance of an attorney)

Introduction

Plaintiffs, Robert and Zarina Belcher, submit this first amended complaint pursuant to this Court allowing them to request leave to file the same. A motion requesting leave under Fed. R. Civ. P. Rule 15(a)(2) is contemporaneously filed.

This amended complaint asks for declaratory and injunctive relief barring the Defendants from foreclosing on Plaintiffs' residence (the Property). Defendant Select Portfolio Servicing, Inc, (SPS), is a mortgage loan servicer who has commenced foreclosure proceedings on behalf of Defendant Bank of New York, Mellon, formerly known as The Bank of New York as successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Trust 2006-AR4 Mortgage Pass-Through Certificates, Series 2006-AR4 ("BONYM in its trustee capacity", or, "BONYM as Trustee"). The reason for the requested relief is that a 2010 assignment of mortgage to BONYM as Trustee is defective and conveys no

mortgage title to BONYM as Trustee pursuant to Massachusetts' statutes governing title to registered land.

## Parties

1. Plaintiff, Robert Belcher, owns and resides at the Property, 590 Truman Park Highway, Hyde Park, MA 02136.

2. Plaintiff, Zarina Belcher, is married to Robert and resides at the Property.

3. Defendant Bank of New York, Mellon, formerly known as The Bank of New York, claims to be the trustee of a trust named the Certificateholders of Structured Asset Mortgage Investments II Trust 2006-AR4 Mortgage Pass-Through Certificates, Series 2006-AR4 (the Trust) claims to hold a mortgage given by Plaintiffs to Mortgage Electronic Registration Systems, Inc. (MERS). BONYM's principal place of business is 240 Greenwich Street New York, NY 10286. (It is not known whether BONYM was properly served in its trustee capacity.)

4. Defendant Select Portfolio Services, Inc. (SPS) is the mortgage loan servicer for the Plaintiffs' mortgage loan SPS's principal place of business is 3217 South Decker Dr., Salt Lake City, UT 84119.

5. Defendants John Doe's 1-10 are fictitiously named parties whose identifies are unknown at this time. Plaintiffs allege that these other parties are also liable for the unlawful commencing of foreclosure proceedings of the Plaintiffs' residence.

## Facts[1]

6. The Plaintiffs acquired the Property by quitclaim deed dated November 27, 2001 which is registered in the Suffolk Registry District of the Land Court, doc. no. 624659, Book 584, Page 51, on certificate of title no. 117651.[2] The deed was registered on November 30, 2001.

7. On or about December 28, 2005, for what was presented to be a loan from Union Federal Bank of Indianapolis (Union Federal) of $412,000, the Plaintiffs gave a mortgage to the Property to MERS as nominee for Union Federal. Said mortgage was filed as doc. no. 713600 on same certificate of title.

8. On May 8, 2010, MERS filed an assignment of the mortgage to the Trust as doc. no. 713600 in the same certificate of title.

9. The date of execution of the assignment is April 26, 2010.

10. The assignment says, **"This assignment has an effective date of December 8, 2009."**

11. The Plaintiffs conveyed the Property to Robert Belcher individually by quitclaim deed dated May 5, 2017, registered as document no. 869668. This created the certificate of title no. 133844, canceling 117651. Robert and Zarina still live in the Property as husband and wife.

12. SPS and Orlans have begun the process of foreclosing on the Plaintiffs' residence.

---

[1] Many of the following facts are taken and adapted from the Massachusetts Attorney General's complaint against several well-known mortgage industry entities; COMMONWEALTH OF MASSACHUSETTS v. BANK OF AMERICA, BAC HOME LOANS SERVICING, LP, BAC GP, LLC, JPMORGAN CHASE BANK, NA, CITIBANK N.A., CITIMORTGAGE, INC., GMAC MORTGAGE, LLC, WELLS FARGO BANK, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., and MERSCORP, INC. (Suffolk Sup. Ct. C.A. No. 11-4363).

[2] All references to registration of instruments are in the Suffolk Registry District of the Land Court.

13. In 2017 and 2019, Land Court Servicemembers' case orders of notice and an affidavit under G. L. c. 244, § 35B and 35C were recorded in certificate 133844.

\*\*\*

14. Under Massachusetts law, the holder of a mortgage may foreclose the mortgagor's right of redemption by exercising the statutory power of sale, if that power is granted by the mortgage.

15. Where the mortgage grants the mortgage holder the power of sale, it includes by reference the power of sale set forth at G. L. c. 183, § 21, as regulated by G. L. c. 244, §§ 11-17C.

16. Under G. L. c. 183, § 21, after a mortgagor defaults in the performance of the underlying obligation secured by the mortgage, the mortgage holder may sell the property at a public auction and convey the property to the purchaser in fee simple. "[S]uch sale shall forever bar the mortgagor and all persons who claim under him from all right and interest in the mortgaged premises, whether at law or in equity," Id.

17. Because this statutory scheme allows the mortgage holder to exercise this extraordinary power without first obtaining judicial authorization, Massachusetts courts have consistently required that "one who sells under a power [of sale] must follow strictly its terms . . [and i]f he fails to do so there is no valid execution of the power, and the sale is wholly void." Moore v. Dick, 187 Mass. 207, 211 (1905). See Roche v. Farnsworth, 106 Mass. 509, 513 (1871) (power of sale contained in mortgage "must be executed in strict compliance with its terms"). The Supreme Judicial Court reaffirmed this requirement in Bevilacqua v. Rodriguez:

> Our recent decision in the case of U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 647 (2011), however, concluded that "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under [the relevant] statutes is void." 460 Mass. 762, 778 (2011).

18. Massachusetts law further explicitly limits who is entitled to foreclose. The statutory power of sale explicitly identifies the parties who can exercise the power. The power can only be exercised by "the mortgagee or his executors, administrators, successors or assigns." G. L. c. 183, § 21.

19. In addition, G. L. 244, § 14 authorizes only "[t]he mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or a person acting in the name of such mortgagee or person" to exercise the statutory power of sale. Accordingly, as the Supreme Judicial Court has held, "only a present holder of the mortgage is authorized to foreclose on the mortgaged property." U.S. Bank, NA. v. Ibanez, 458 Mass. 637, 648 (2011).

### The backdated MERS assignment at issue in this case failed to comply with the Massachusetts registered land statute.

### The MERS electronic registry system

20. MERSCORP was established in the late 1990s by several of the nation's largest banks, secondary market purchasers, and other industry stakeholders including the Mortgage Bankers Association and the American Land Title Association.

21. MERSCORP is the parent company of Mortgage Electronic Registration System, Inc., (MERS) a corporation whose sole purpose is to serve as mortgagee of record and nominee for the beneficial owners of mortgage loans.

22. MERSCORP and MERS are owned by some of the nation's biggest banks and mortgage companies.

23. MERS has created a private electronic database (the "MERS System"). The MERS System is designed to be a national electronic registry that tracks changes in beneficial ownership interests and servicing rights associated with mortgage loans. Full access to the MERS System is limited to members and/or owners of MERS.

24. Since 1997, tens of millions of home loans have been registered on the MERS System.

25. Through the MERS System, MERS is named the mortgagee of record for participating members either at the origination of the mortgage — by being named the mortgagee as nominee for the originating lender and its successors and assigns in the mortgage documents or by subsequent assignment of the mortgage to MERS. MERS is listed as the mortgagee in the official records maintained by the register of deeds for the county in which the property rests. The lenders retain the promissory notes, which they often sell to investors without recording the transaction in the public record. Lenders likewise are granted the servicing rights to the mortgage, which they either retain or transfer to other entities. As with the transfer of the promissory notes, a transfer of servicing rights is not recorded in the public record.

26. To facilitate the transfer of beneficial interests in mortgages, MERS and its members typically structure mortgage transaction, as follows:

    a. When the purchase of a home is financed (or refinanced), the lender obtains from the borrower a promissory note, which sets forth the repayment terms of the loan, and a mortgage instrument, which is intended to secure the repayment of the promissory note. The mortgage names MERS as the mortgagee as nominee for

      the lender and its successors and assigns. In the mortgage, the borrower assigns his or her right, title, and interest in the property to MERS and the mortgage instrument is then recorded or registered in the local land records with MERS as the named mortgagee.

b. When the promissory note is sold, and potentially re-sold, in the secondary mortgage market, the transaction is, or is supposed to be, tracked in the MERS database as a transfer of beneficial rights from one party to another. MERS members are responsible for entering accurate information into the MERS System reporting the transfer of the beneficial interests and servicing rights associated with each mortgage. Members of the general public, however, are unable to access this information.

c. As long as the parties involved in the sale are MERS members, MERS remains the mortgagee of record and purportedly acts as an agent for each new owner of the promissory note.

See Eaton v. Federal Nat'l Mort. Assoc., 462 Mass. 569 (2012) fn. 5 (reproduced below):

Mortgage Electronic Registration Systems, Inc. (MERS), is a Delaware nonstock corporation owned by its members. See Arnold, Yes, There is Life on MERS, 11 Prob. & Prop. 32, 33 (1997) (Arnold). MERS is mortgagee of record for mortgage loans registered on the MERS electronic registration system, which tracks servicing rights and beneficial ownership interests in those loans; the system allows these servicing rights and beneficial ownership interests to be traded electronically between members without the need to record publicly each mortgage assignment. See id. In particular, when the beneficial interest in a loan is sold, the note is transferred by indorsement and delivery between the parties, and the new ownership interest is reflected in the MERS system. MERS remains the mortgagee of record so long as the note is sold to another MERS member; **no aspect of such a transaction is publicly recorded**. See In re Agard, 444 B.R. 231, 248 (Bankr. E.D.N.Y. 2011); MERS, Inc. v. Romaine, 8 N.Y.3d 90, 96 (N.Y. 2006). If an ownership interest in, or servicing right to, a mortgage loan is transferred by a MERS member to a non-MERS member, an assignment of the mortgage from the MERS member to the non-MERS member is publicly recorded and the loan is "deactivated" within the MERS system. See id. at 96 n.4. For additional discussion of MERS, see note 27, infra.
Eaton v. Federal Nat'l Mort. Assoc., 462 Mass. 569 (2012) fn. 5.

***
<u>Registered Land in Massachusetts</u>

27. In Massachusetts, land is either "registered" or "unregistered."

28. If land is registered, all of the documents affecting title to a particular parcel of real estate must be "registered" with the registries of deeds under the auspices of the Land Court. (Unregistered land is under the auspices of the Secretary of State.)

29. Massachusetts's system of land registration was established by the Land Court Act, which is codified as G. L. c. 185, §§ 26-118.

30. Registered land has a special status in Massachusetts. "The principal reason for establishing a land title registration system pursuant to G. L. c. 185 is to provide individuals with a means of ensuring that titles to land are indefeasible and certain." <u>Commonwealth Elec. Co. v. McCardell</u>, 450 Mass. 48, 50 (2007).

31. Once registered, no-one can have a claim to the land that does not appear on the face of the registered documents. As the Supreme Judicial Court has said, "the only rights are registered rights." <u>Deacy v. Berberian</u>, 344 Mass. 321, 328 (1962) (quoting <u>Tyler v. Judges of the Court of Registration</u>, 175 Mass. 71, 81 (1900) (Holmes, C.J). Because of this, all persons who deal with registered land are entitled to rely on the registered documents.

32. Pursuant as G. L. e. 185, § 67, all instruments that in any way are associated with a mortgage on registered land must themselves be registered. Section 67 reads, in relevant part:

> The owner of registered land may mortgage it by executing a mortgage deed. Such deed may be assigned, extended, discharged, released in whole or in part, or otherwise dealt with by the mortgagee by any form of deed or instrument sufficient in law for the purpose. But such mortgage deed, and ***all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered,*** and shall take effect upon the title only from the time of registration.

G. L. c. 185, § 67 (emphasis added).

33. The creation and use of the MERS System -- including the assignment of mortgages to MERS "as nominee" for others, and the naming of MERS as the original mortgagee in the mortgage -- was adopted by entities participating in the mortgage securitization process principally to avoid registration and recording requirements. By cutting these corners, MERS and its industry owners, among other purposes, have sought to avoid the payment of millions of dollars of filing fees and to avoid registering transactions ***which assign, extend, discharge and otherwise deal with the mortgage***.

34. Regarding the Plaintiffs' mortgage, while Union Federal was identified as the "lender" in the mortgage, MERS was named as the "mortgagee."

35. The mortgage included the following boilerplate language concerning its mortgagee:

> "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
> (emphasis in original).

36. On the basis of statements made in the prospectus supplement for the Trust at issue here[3], there were several assignments of beneficial interest in the mortgage that were not registered.

37. The discernable assignments include an assignment from the originator, Union Federal, a seller, a sponsor, a depositor, and the original trustee, JPMorgan Chase Bank N.A., and to the current trustee, BONYM.

38. No document reflecting these transfers was registered in violation of G. L. c. 185, § 67.

39. Discovery in this action will identify the precise number of times in which the beneficial interest in the Plaintiffs' mortgage was assigned or transferred in the MERS system without registration of those assignments or transfers.

40. The failure to register the transfer of the beneficial interests of these mortgages violates G. L. c. 185, § 67.

41. Accordingly, on at least these occasions (and possible other occasions revealed through discovery), MERS and its members failed to register transfers of the beneficial interest in the mortgage of 590 Truman Park Highway, Hyde Park, Mass. in violation of G. L. c. 185, § 67.

## CAUSES OF ACTION

### Count I
**Declaratory Judgment:**
**Failure to Register Transfer of Beneficial Interests in Mortgages**
**in Violation of G. L. e. 185, § 67**
**(as to all Defendants)**

42. The allegations contained in the foregoing paragraphs are incorporated and re-alleged herein by reference.

---

[3] Prospectus Supplement for Structured Asset Mortgage Investments II Trust 2006-AR4
https://www.sec.gov/Archives/edgar/data/1367157/000091142006000418/0000911420-06-000418.txt

43. G. L. c. 185, § 67 permits the mortgaging of registered land, provided that "all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered."

44. Notwithstanding the obligations of G. L. c, 185, § 67, the defendant BONYM was assigned the mortgage after there were several interim transfers of beneficial interest transactions in the mortgage within the Commonwealth without registering any of the instruments associated with those transfers.

45. Accordingly, the Plaintiffs seek a declaration pursuant to G. L. c. 231A, § 1 that G. L. c. 185, § 67 requires that the instruments transferring the beneficial interest in a mortgage secured by registered land, including Plaintiff's, must be registered, and that the intended foreclosure of such mortgage without proper registration of all transfers of interest is unlawful. The Plaintiffs further request that until all such transfers are properly registered, BONYM as trustee does not validly hold the mortgage.

**Count II**
**Injunctive Relief**
**(Defendants BONYM, SPS, and Orlans)**

46. The allegations contained in the foregoing paragraphs are incorporated and re-alleged herein by reference.

47. G. L. c. 185, § 67 permits the mortgaging of registered land, provided that "all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered."

48. Notwithstanding the obligations of G. L. c, 185, § 67, the defendant BONYM was assigned the mortgage after there were several interim transfers of beneficial interest in

the mortgage within the Commonwealth without registering any of the instruments associated with those transfers.

49. Accordingly, the Plaintiffs seek injunctive relief requiring that the foreclosure proceedings initiated and intended by Defendants BONYM, SPS, and Orlans be prohibited until all transfers of beneficial interest are registered as required by G. L. c, 185, § 67.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court grant the following relief:

That the court
1. Enter a declaratory judgment, declaring that failing to register all transfers of beneficial interest in the mortgage that Plaintiffs gave to MERS is unlawful pursuant to G. L. c. 185, § 67; and, that as a result of those failures
2. Grant injunctive relief prohibiting foreclosure proceedings of the Plaintiffs' residence intended by Defendants BONYM, SPS, and Orlans, until the Defendants to take all action necessary to cure defects in mortgage title resulting from their failure to register all assignments or transfers of beneficial interest in the mortgage securing Plaintiffs' registered land.

Respectfully submitted, July 23, 2020

_____
Robert Belcher, pro se

_____
Zarina Belcher, pro se

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document to the attorney for Select Portfolio Servicing, Inc. and Bank of New York Mellon:

>Donald W. Seeley, Jr.
>Jeffrey D. Adams, Esq.
>2 Oliver St. Suite 405
>Boston, Mass. 02109
>Donald.Seeley@piblaw.com
>Jeffrey.Adams@piblaw.com

_____
Robert Belcher