# EXHIBIT "C"

# ADJUSTABLE RATE NOTE

MIN# 100245400024436334

**ORIGINAL**
2443633
Belcher

(MTA-Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT MY MONTHLY PAYMENT CAN INCREASE. MY PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE PRINCIPAL CAP STATED IN MY NOTE.

December 22, 2005              Brockton                         MA
      [Date]                           [City]                         [State]

590 Truman Highway, Hyde Park, MA 02136
                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 412,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Principal amount may increase as provided under the terms of this Note, but will never exceed U.S. $   473,800.00   , (this amount is called the "Principal Cap" and represents 115.00  %, of the original loan amount).The Lender is Union Federal Bank of Indianapolis

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  1.500  %. The interest rate I will pay may change in accordance with Section 4 of  this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on February 1, 2006                    .

I will make these payments every month until I have paid all of the Principal and Interest and any other charges  described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on January 1, 2036                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Waterfield Mortgage Company, Incorporated, 7500 West Jefferson Blvd., Fort Wayne, IN 46804

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Change Date will be in the amount of U.S. $1,421.90              .
This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Interest Rate Change Dates

The interest rate I will pay may change on the first day of February              , 2006      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

67066752

W533  8/05

Page 1 of 5

Initials:

**(B) The Index**                                                    2443633

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index." If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding a margin of Three    and 075/1000                              percentage points ( 3.075    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

**(D) Limits on Interest Rate Changes**

My interest rate will never be greater than   9.950        %. Beginning with my first Interest Rate Change Date, my interest rate will never be lower than  3.075     %, which is equal to my Margin.

**(E) Payment Change Dates**

The minimum monthly payment I must pay may change beginning on the first day of February, 2007                 , and on that day every 12th month thereafter. Each date on which my minimum monthly payment may change is called a "Payment Change Date." My monthly payment may also change in accordance with Section 4(I) of this Note.

**(F) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date at the interest rate in effect during the month preceding the Payment Change Date in substantially equal payments. Unless the payment is subject to the Payment Change Cap, as described in Section 4(G), the result of this calculation will be the amount of my new minimum monthly payment.

**(G) Payment Change Cap**

Changes in my payments are subject to a Payment Change Cap. Under the Payment Change Cap, my payment may not increase by more than 7.5% of the last monthly payment due before the Payment Change Date. The Payment Change Cap will not apply to any change in payment on a Recast Date, as described in Section 4(H) of this Note, or to a change in payment in accordance with Section 4(I) of this Note.

**(H) Recast Dates**

The monthly payment I must pay will be recast on the fifth Payment Change Date, on each succeeding fifth Payment Change Date thereafter, and on the final Payment Change Date. Each date on which my monthly payment may be recast is called a Recast Date. On each Recast Date, the Note Holder will calculate the amount of my new minimum monthly payment in the manner described in Section 4(F). The payment calculated on a Recast Date will be subject to change on each succeeding Payment Change Date and Recast Date.

**(I) Additions to My Unpaid Principal**

My minimum monthly payment may not be sufficient to pay interest as it accrues. If interest that accrues for any month is greater than the minimum monthly payment for that month and I do not elect to pay a higher amount, the excess interest will be added to my Principal, and interest, at the interest rate in effect under this Note, will accrue on the additional principal.

My total unpaid principal may not exceed the Principal Cap. If the Note Holder determines that I will exceed the Principal Cap if I continue to make the minimum monthly payment, the Note Holder will calculate a new minimum monthly payment in the manner described in Section 4(F) and I will pay the new minimum monthly payment beginning on the payment due date on which the Payment Cap would have otherwise been exceeded. The new payment will be subject to change on each succeeding Payment Change Date, including each Recast Date.

W533

Initials:

**(J) Payment Options**

2443633

The monthly payments calculated in accordance with Section 4(F)-(I) are the minimum monthly payments required under this Note. For all payments after the first payment, Lender will provide me with up to three (3) of the following additional payment options:

1. **Interest Only Payment**
   The Interest Only Payment is an amount sufficient to pay accrued interest at the then current interest rate.

2. **Fully Amortized Payment**
   The Fully Amortized Payment is an amount sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the then current interest rate in substantially equal payments.

3. **15 Year Amortized Payment**
   The 15 Year Amortized Payment is an amount sufficient to repay unpaid principal and interest that I am expected to owe in full on the 15 year anniversary of the date of this Note at the then current interest rate in substantially equal payments.

The payment options will be provided and available to me only if they are greater than the amount of the minimum monthly payment required under this Note.

**(K) NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  3.000      % of my overdue payment of Principal and Interest. I will pay this late charge promptly, but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

W533

Initials

**(D) No Waiver By Note Holder**                    2443633

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person, who takes over these obligations, including the obligation of a guarantor, surety, or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder Under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that the Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2443633

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
-Borrower

Robert Belcher _____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness

*[Sign Original Only]*

Was Extra Page

W533

Page 5 of 5

Initials:

PAY TO THE ORDER OF: JPMorgan Chase Bank, N.A., as Trustee

WITHOUT RECOURSE
UNION FEDERAL BANK OF INDIANAPOLIS

BY:

KENT D. SAARI,  VICE PRESIDENT

ORIGINAL

## PREPAYMENT CHARGE ADDENDUM TO NOTE
Belcher

THIS PREPAYMENT CHARGE ADDENDUM TO NOTE IS MADE THIS 22nd      day of December         , 2005
and is incorporated into and shall be deemed to amend and supplement the note made by the undersigned ("Borrower") in favor of
Union Federal Bank of Indianapolis                                                    ("Lender")
and dated the same date as this Addendum (the "Note").

**AMENDMENT AND RESTATEMENT OF COVENANTS:** This Addendum amends and restates

- Section 4 of the Fixed Rate Note,      or
- Section 5 of the Adjustable Rate Note,  or
- Section 6 of the Second Mortgage Note, in its entirety as follows:

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all of the monthly payments due under this Note.

Subject to the Prepayment charge specified below, I may make a full Prepayment or partial Prepayment. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If my Note is an Adjustable Rate Note, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If, within the first 36-months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder

All other terms and conditions of the Note remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Charge Addendum to Note.

| | |
|---|---|
| 12/22/05 | _____ (Seal) |
| Date | Borrower Robert Belcher |
| _____ | _____ (Seal) |
| Date | Borrower |
| _____ | _____ (Seal) |
| Date | Borrower |
| _____ | _____ (Seal) |
| Date | Borrower |
| _____ | _____ (Seal) |
| Date | Borrower |
| _____ | _____ (Seal) |
| Date | Borrower |
| _____ | _____ (Seal) |
| Date | Borrower |
| | Witness |

W534 8/05

# ALLONGE TO MORTGAGE NOTE

**LOAN NUMBER:** ▮▮▮▮▮▮▮

**NOTE DATED:**  December 22, 2005

**LOAN AMOUNT:**  $412,000.00

**MORTGAGOR:**    Robert Belcher and Zarina Belcher

**PROPERTY ADDRESS:** 590 Truman Highway, Hyde Park, MA 02136

Allonge to one certain Mortgage Note dated, December 22, 2005 in favor of Union Federal Bank of Indianapolis, executed by Robert Belcher and Zarina Belcher.

**Pay to the order of The Bank of New York Mellon formerly known as The Bank of New York as successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Trust 2006-AR4 Mortgage Pass-Through Certificates, Series 2006-AR4**

**without recourse**

**SELLER:**   **JPMorgan Chase Bank, trustee**

**BY:**   *Serina Lee*

Serina Lee / Vice President
Authorized Officer