UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT BELCHER and | * | |
| ZARINA BELCHER, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10511-IT |
| | * | |
| BANK OF NEW YORK MELLON, | * | |
| SELECT PORTFOLIO SERVICING, INC., | * | |
| and JOHN DOES 1-10, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER
January 28, 2021

TALWANI, D.J.

Pending before the court is Plaintiffs Robert and Zarina Belcher's Motion for Leave to Amend the Complaint [#38]. For the reasons set forth below, Plaintiffs' motion is DENIED.

1. *The Original Complaint and Procedural History*

On February 28, 2020, the Belchers filed this action in Suffolk County Superior Court asserting an unlawful foreclosure on their residence. See State Court Complaint, Notice of Removal Exh. A 1-37 [#1-1]. In their 37-page complaint, the Belchers brought 26 causes of action against Defendant Bank of New York Mellon (Plaintiffs' mortgage holder), Select Portfolio Servicing, Inc. (Plaintiffs' mortgage servicer) and Orlans, P.C. (foreclosure counsel for the mortgagee).

The factual allegations and legal claims underlying the original complaint were markedly difficult to comprehend. However, the claims generally related to three different issues. First, the Belchers complained that Defendant Bank of New York Mellon did not hold proper title to the mortgage at issue (Counts 1–4, 12–13, 22–23). Second, the Belchers complained that their

original lender (who is not a party to this action) engaged in unlawful practices at the time the Belchers' loan was originated (Counts 5, 8–11, 22). Third, the Belchers complained that Defendant Select Portfolio Servicing acted unlawfully in servicing the mortgage (Counts 5–6, 8, 12, 14). The Belchers also filed an Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction, requesting that Defendant Bank of New York Mellon, as the mortgagee, be enjoined from foreclosing on the property. Emergency Petition, Notice of Removal Exh. A at 39 [#1-1].

On March 12, 2020, Defendants removed the action to this court, see Notice of Removal [#1], and concurrently filed an opposition to the pending motion for a temporary restraining order. See Defs.' Opp'n [#4]. Shortly before the hearing on the emergency motion, Defendants alerted the court that Plaintiffs had filed for bankruptcy protection. See also Suggestion of Bankruptcy [#12]. The case was stayed while the bankruptcy case proceeded. See Elec. Order [#13].

On April 30, 2020, following the voluntary dismissal of the Belchers' bankruptcy petition, Defendants Bank of New York Mellon and Select Portfolio Servicing filed a joint Motion to Dismiss the Complaint [#21].[1] Shortly thereafter, Plaintiffs' counsel moved to withdraw, and Plaintiffs entered an appearance to proceed in this action *pro se*. See Mot. to Withdraw [#23]; Entry of Appearance [#29].

In light of the withdrawal of Plaintiffs' counsel, the court sua sponte extended the deadline for Plaintiffs' opposition to Defendants' motion to dismiss to May 29, 2020. See Elec. Order

---

[1] The parties also filed a Joint Stipulation of Dismissal [#31] terminating all claims against Defendant Orlans P.C. The parties agreed further that, in light of an ongoing moratorium on Massachusetts foreclosure proceedings, the relief requested in the motion for a temporary restraining order was, at least temporarily, mooted. See Elec. Clerk's Notes [#20].

2

[#24]. However, no opposition having been filed by that deadline, on June 12, 2020, the court granted Plaintiffs until June 26, 2020, to provide good cause for why they should be permitted to file their opposition to Defendants' motion to dismiss after the deadline had passed. Order [#33]. The court warned Plaintiffs that failure to respond would result in dismissal of the action.

On June 22, 2020, Plaintiffs filed a Motion to Extend Time [#34] to respond to Defendants' motion to dismiss. However, the motion did not set forth any cause for Plaintiffs' failure to comply with the May 29, 2020 deadline and made no commitment to offer any substantive response to Defendants' motion to dismiss. Accordingly, the court denied Plaintiffs' motion and kept the June 26, 2020 deadline for any supplemental motions for leave to file a late opposition. Order [#35].

On June 24, 2020, Plaintiffs filed their supplemental Motion for Leave to File a Late Opposition [#36]. However, Plaintiffs again did not provide cause for their opposition being late nor did they commit to filing an opposition at all. Instead, Plaintiffs expressed an intent to file an amended complaint. Accordingly, the court denied Plaintiffs' request to file a late opposition and granted Defendants' Motion to Dismiss [#21]. See Order [#37]. The court set a deadline of July 23, 2020 for any motion seeking leave to file the proposed amended complaint. Id.

On July 23, 2020, Plaintiffs filed the present Motion for Leave to Amend the Complaint [#38]. In addition to requesting leave to file the attached Proposed First Amended Complaint [#38-1], Plaintiffs' motion also requested two additional months' time to file a *second* amended complaint. Plaintiffs stated that they had "recently engaged an expert in consumer residential mortgages" and needed the additional time so that Plaintiffs could "add additional claims." Pls.' Mot. 1–2 [#38]. The court bifurcated the two forms of relief requested by Plaintiffs and first invited Defendants to submit their position only as to Plaintiffs' request of a two-month

extension to file a motion for leave to file a second amended complaint. Elec. Order [#40]. Following Defendants' Opposition [#41] to this request, the court denied Plaintiffs' motion with regard to the two month extension of time because Plaintiffs "provided no cause for why the investigation they now seek to initiate did not occur before they filed their initial complaint or during the subsequent months." See Elec. Order [#42]. The court then directed that Defendants file any opposition to Plaintiffs filing the Proposed First Amended Complaint [#38-1]. Id. Defendants promptly filed their Opposition [#43], leaving the motion ripe for adjudication.

2. *The Proposed First Amended Complaint*

Plaintiffs' Proposed First Amended Complaint [#38-1] alleges as follows. Plaintiff Robert Belcher owns and resides with his wife Zarina Belcher at the property at issue, located at 590 Truman Park Highway, Hyde Park, MA 02136 (the "Property"). Proposed Amended Complaint (Am. Compl.) ¶¶ 1, 2 [#38-1]. Plaintiffs acquired the Property by quitclaim deed on November 27, 2001 and the Property is registered in the Suffolk Registry District of the Land Court. Id. ¶ 6. On December 28, 2005, in lieu of a loan for $412,000 from Union Federal Bank of Indianapolis ("Union Federal"), Plaintiffs granted Union Federal a mortgage on the Property with Mortgage Electronic Registration Systems ("MERS") designated as nominee for Union Federal. Id. ¶ 7.

According to the Proposed First Amended Complaint, on May 8, 2010, MERS filed an assignment of the mortgage to a "Certificateholders of Structured Asset Mortgage Investments II Trust 2006-AR4 Mortgage Pass-Through Certificates, Series 2006-AR4" (the "Trust"). Id. ¶¶ 3, 8. Defendant Bank of New York Mellon is Trustee of the Trust. Id. ¶ 3. Although the assignment had an execution date of April 26, 2010, it purports to have an "effective date" of December 8, 2009. Id. ¶¶ 9, 10.

The Proposed First Amended Complaint alleges further that Defendant Select Portfolio Servicing, Inc. ("SPS") has now commenced foreclosure proceedings on behalf of Bank of New York Mellon as Trustee of the Trust. Id. at Introduction, ¶ 12.

Count I of Plaintiffs' Proposed First Amended Complaint seeks a declaratory judgment that Bank of New York Mellon, as Trustee for the Trust, does not hold a valid mortgage on the Property. Id. ¶ 45. Plaintiffs claim this is so because, prior to Bank of New York Mellon being assigned the mortgage, "there were several interim transfers of beneficial interest transactions in the mortgage within the Commonwealth without registering any of the instruments associated with those transfers." Id. ¶ 44.

Count II of Plaintiffs' Proposed First Amended Complaint seeks injunctive relief on the same grounds. Id. ¶¶ 46–49. Namely, Plaintiffs request that "the foreclosure proceedings initiated and intended by Defendants . . . be prohibited until all transfers of beneficial interest are registered as required by Mass. Gen. Laws ch. 185, § 67."

3. *Legal Standard and Discussion*

Under Fed. R. Civ. P. 15(a)(2), leave to amend shall be "freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)(2)). While the rule requires the court to liberally grant motions to amend, the rule is bounded in at least two important ways that are applicable here. First, leave to amend should not be granted where there has been "undue delay, bad faith or dilatory motive on the part of the movant." Id. Second, leave to amend is not warranted where it would be futile, which is to say where the amended complaint "would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Crowl v. M. Chin Realty Trust, 607 F. Supp. 2d 245, 246 (D. Mass 2009) (citing Hatch v. Dep't for Children,

Youth & Their Families, 274 F.3d 12, 19 (1st Cir.2001)). Here, Plaintiffs' motion fails to clear both hurdles.

As an initial matter, Plaintiffs' motion provides no basis for why their motion is timely. Instead, Plaintiffs simply state that they "respectfully request under Fed. R. Civ. P. Rule 15(a)(2) leave to file the proposed first amended complaint submitted herewith." Pls.' Mot. 1 [#38]. While Plaintiffs' burden on a Fed. R. Civ. P. 15(a)(2) motion is not a high one, it is not non-existent either. Plaintiffs' omission is made even more salient where the court has previously explained to Plaintiffs, who are proceeding *pro se*, that they must set forth cause when requesting relief from the court. See June 12, 2020 Elec. Order [#33]; June 23, 2020 Order [#35]; July 2, 2020 Order [#37]. On the record before the court, the court finds that Plaintiffs' late filing amounts to undue delay.

Beyond the court's conclusion that Plaintiffs have failed to set forth cause for amending their complaint at this time, the legal argument underlying Plaintiffs' proposed amended complaint is futile. Plaintiffs argue that Defendants failed to comply with Massachusetts law insofar as "there were several interim transfers of beneficial interest transactions in the mortgage within the Commonwealth without registering any of the instruments associated with those transfers." Am. Compl. ¶ 44 [#38-1]. Plaintiffs' contention is misplaced.

At the heart of Plaintiffs' argument that registration of all changes in beneficial interest is required is Mass. Gen. Laws ch. 185, § 67. This statute provides as follows:

> The owner of registered land may mortgage it by executing a mortgage deed. Such deed may be assigned, extended, discharged, released in whole or in part, or otherwise dealt with by the mortgagee by any form of deed or instrument sufficient in law for the purpose. But such mortgage deed, and all instruments which assign, extend, discharge and otherwise deal with the mortgage, shall be registered, and shall take effect upon the title only from the time of registration.

6

Mass. Gen. Laws ch. 185, § 67 (emphasis added). Plaintiffs contend that the statute requires that not only the instruments conveying legal title to the land be registered, but also that any and all instruments conveying a beneficial interest, such as notes secured by mortgages, be registered as well. Am. Compl. ¶¶ 44–45 [#38-1]. The only courts to address this argument have squarely rejected it. As a Superior Court Judge stated in Commonwealth v. Bank of Am., N.A., reading the statutory phrase "instruments which . . . otherwise deal with the mortgage" to include notes secured by mortgages would take the statutory phrase out of its context, which is a reference only to those documents that affect title. See No. CIV. 11-4363-BLS1, 2012 WL 6062747, at *15 (Mass. Super. Dec. 3, 2012)). As the court explained:

> A promissory note, and any assignment thereof, does not affect title, and does not purport to do so; its effect, rather, is to evidence a debt. The holder of a note secured by a mortgage has the right to receive payment of the debt, along with "an equitable right to obtain an assignment of the mortgage," so as to enforce the right to payment. But "the mere transfer of a mortgage note does not carry with it the mortgage," and thus does not affect title to the mortgaged property.

Id. (citing Eaton v. Fed. Nat. Mortg. Ass'n, 462 Mass. 569, 576 (2012)) (internal citations and quotations omitted). Indeed, in Eaton the Massachusetts Supreme Judicial Court noted that "the mere transfer of a mortgage note does not carry with it the mortgage," and that Massachusetts' "recording system has never required mortgage notes to be recorded." [2] 462 Mass. at 576, 588;

---

[2] The terms "recorded" and "registered" are not interchangeable. Judge Boroff of the United States Bankruptcy Court for the District of Massachusetts has provided the following helpful explanation of what it means for a property to be "registered" as opposed to "recorded:"

> In Massachusetts, real property may be either registered or unregistered (recorded) land. Real estate in Massachusetts primarily consists of unregistered land, which is conveyed by the delivery of a deed. Registered land is not recorded in the same manner as other real estate, but is governed by Massachusetts statutes codifying a version of what is commonly referred to as a "Torrens System" for the registration of land titles. Registered land has gone through an adjudication process in order to quiet title, and "the Commonwealth guarantees and insures the title to land that is registered." A certificate of title in registered property is stored

see also LaRace v. Wells Fargo Bank, N.A., No. 18-MISC-000327-HPS, 2019 WL 2177956, at *7 (Mass. Land Ct. May 17, 2019) ("Promissory notes, on the other hand, are never recorded, and ownership of a note is demonstrated by an endorsement on the note itself; it is not necessary to demonstrate a chain of title or to even identify past holders of a note in order to provide evidence that one is the current holder of the note, because the chain is demonstrated by the endorsements on the note itself and are self-evident"); Germano v. U.S. Bank Nat'l Ass'n, No. 17-SBQ-36138-12-001-HPS, 2018 WL 3826351, at *3 (Mass. Land Ct. Aug. 10, 2018) (same). For these reasons, Plaintiffs' argument that Defendants were required to register all transfers in the beneficial interest fails as a matter of law and thus granting leave to amend the complaint would be futile.[3]

  4. *Conclusion*

For these reasons, Plaintiff's Motion for Leave to Amend the Complaint [#38] is hereby DENIED. This case is CLOSED.

IT IS SO ORDERED.

Date: January 28, 2021

/s/ Indira Talwani
United States District Judge

---

    on the "registered land side of the registry of deeds," and may be altered only
    through an action [] brought in the Land Court.

In re Bailey, 468 B.R. 464, 477 (Bankr. D. Mass. 2012) (internal citations omitted).

[3] Plaintiffs also contend in the "Facts" section of their proposed first amended complaint (but not in the "Causes of Action" section) that the May 8, 2010 mortgage assignment was backdated to December 8, 2009, making the assignment invalid. Am. Compl. 5 [#38-1]. However, alleged defects in an assignment render that assignment "merely voidable at the election of one party but otherwise effective to pass legal title." Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013).